UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| CHEMTURA CORPORATION, GREAT LAKES CHEMICAL CORPORATION, ISCI, INC., KEM MANUFACTURING CORPORATION AND NAUGATUCK TREATMENT COMPANY, | : | Case No. 10 Civ. _____ |
| | : | Chapter 11 |
| | : | Bankr. Case No. 09-11233 (REG) |
| Plaintiffs, | : | Adversary Proceeding No. 09-1719 (REG) |
| v. | : | |
| UNITED STATES OF AMERICA, STATE OF CONNECTICUT, STATE OF FLORIDA, STATE OF NEW JERSEY, STATE OF NEW YORK, STATE OF NORTH CAROLINA, COMMONWEALTH OF PENNSYLVANIA, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, SANTA ANA REGIONAL WATER QUALITY CONTROL BOARD, CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, CALIFORNIA STATE WATER RESOURCES CONTROL BOARD, CONNECTICUT COMMISSIONER OF ENVIRONMENTAL PROTECTION, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, ADMINISTRATOR OF NEW JERSEY SPILL COMPENSATION FUND, NEW YORK DEPARTMENT OF ENVIRONMENTAL CONSERVATION, NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, NORTH CAROLINA DIVISION OF WASTE MANAGEMENT and PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, | : | ECF CASE |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR WITHDRAWAL OF THE REFERENCE PURSUANT TO 28 U.S.C. § 157(d)

PREET BHARARA
United States Attorney for the
Southern District of New York
MATTHEW L. SCHWARTZ
LAWRENCE H. FOGELMAN
BRIAN MORGAN
NATALIE N. KUEHLER
Assistant United States Attorneys
86 Chambers Street -- 3rd Floor
New York, New York 10007
Tel. No.: (212) 637-2800
Fax No.: (212) 637-2730

STATE OF CALIFORNIA ACTING BY
AND THROUGH THE CALIFORNIA
DEPARTMENT OF TOXIC SUBSTANCES
CONTROL, THE STATE WATER
RESOURCES CONTROL BOARD, THE
REGIONAL WATER QUALITY CONTROL
BOARD, SANTA ANA REGION
By:     Thomas G. Heller and Eric M. Katz
Deputy Attorneys General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
Tel:  (213) 897-2600
Fax:  (213) 897-2802

CONNECTICUT COMMISSIONER OF
ENVIRONMENTAL PROTECTION
By:     Krista E. Trousdale
Assistant Attorney General
55 Elm Street
Hartford, CT  06106
Tel.  (860) 808-5250
Fax: (860) 808-5386

FLORIDA DEPARTMENT OF
ENVIRONMENTAL PROTECTION
By:     Jonathan H. Alden, Esq.,
Asst. Genl. Counsel
3900 Commonwealth Blvd.
M.S. 35
Tallahassee, FL  32399
(850) 245 2238
Florida Bar No.  366692
jonathan.alden@dep.state.fl.us

FOR THE STATE OF NEW YORK
ANDREW M. CUOMO,
ATTORNEY GENERAL
By:     Maureen F. Leary
Assistant Attorney General
Environmental Protection Bureau
New York State Department of Law
The Capitol
Albany, New York 12224-0341
(518) 474-7154
Maureen.Leary@ag.ny.gov

FOR THE STATE OF
NORTH CAROLINA
ROY COOPER
Attorney General
W. Wallace Finlator, Jr.
Assistant Attorney General
North Carolina Department of Justice
9001 Mail Service Center
Raleigh, N.C. 27699-9001
Tel.: 919-716-6600
Fax:  919-716-6939
wfinlat@ncdoj.gov
NC Bar # 14197

FOR THE PENNSYLVANIA DEPARTMENT
OF ENVIRONMENTAL PROTECTION
Stephanie K. Gallogly, Assistant Counsel
Office of General Counsel
Northwest Regional Counsel
Department of Environmental Protection
230 Chestnut Street
Meadville, PA  16335-3481
Tel: (724) 656-3471;  Fax:  (724) 656-3267
E-mail:  sgallogly@state.pa.us

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    The Chapter 11 Proceeding and the Proofs of Claim . . . . . . . . . . . . . . . . . . 5

    B.    CERCLA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    RCRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.    Discharge of "Claims" Under the Bankruptcy Code . . . . . . . . . . . . . . . . . . 12

    E.    The Adversary Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.    THE DEBTORS' ADVERSARY PROCEEDING IS SUBJECT TO MANDATORY
    WITHDRAWAL OF THE REFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A.    This Adversary Proceeding Is Subject to Mandatory Withdrawal
        of the Reference Because It Implicates A Number of Substantial Questions of
        Non-Bankruptcy Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            1.    Disagreement Between the Parties as to the Applicability of
                the Second Circuit's Chateaugay Decision Necessitates
                Consideration of Substantial Issues of Environmental Law . . . . 20

            2.    Application of Chateaugay's "Ongoing Pollution" Test
                Requires Substantial Consideration of Substantive Environmental
                Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    B.    Resolution of the Debtors' Adversary Proceeding Would Require
        Addressing Questions of First Impression in the Second Circuit as to Whether
        Breach of Performance Gives Rise to a "Right of Payment"
        under Federal Environmental Statutes Other than CERCLA . . . . . . . . . . . . . 26

II.    THIS COURT SHOULD WITHDRAW THE REFERENCE AS A MATTER OF
    DISCRETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

TABLE OF AUTHORITIES

FEDERAL CASES

AM Int'l, Inc. v. Datacard Corp.,
    106 F.3d 1342 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

American Tel. & Tel. Co. v. Chateaugay Corp.,
    88 B.R. 581 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

B.F. Goodrich Co. v. Murtha,
    697 F. Supp. 89 (D. Conn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

B.F. Goodrich Co. v. Murtha,
    958 F.2d 1192 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 25

Bear, Stearns Sec. Corp. v. Gredd,
    No. 01 Civ. 4379 (NRB),
    2001 WL 840187 (S.D.N.Y. July 25, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Ciba-Geigy Corp. v. Sidamon-Eristoff,
    3 F.3d 40 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

City of New York v. Exxon Corp.,
    932 F.2d 1020 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Enron Corp. v. J.P. Morgan Secs., Inc. (In re Enron Corp.),
    Nos. 07 Civ. 10527 (SAS), 07 Civ. 10530 (SAS),
    2008 WL 649770 (S.D.N.Y. Mar. 10, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Eastern Airlines, Inc. v. Air Line Pilots Assoc. (In re Ionosphere Clubs, Inc.),
    No. 89 Civ. 8250 (MBM),
    1990 WL 5203, (S.D.N.Y. Jan. 24, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Freier v. Westinghouse Elec. Corp.,
    303 F.3d 176 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Burger Boys, Inc.,
    94 F.3d 755 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

In re Combustion Equip. Assocs.,
    67 B.R. 709 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Dana Corp.,
  379 B.R. 449 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

In re Davis,
  3 F.3d 113 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Horizon Air,
  156 B.R. 369 (N.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Jensen,
  995 F.2d 925 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Lion Capital Group,
  63 B.R. 199 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re National Gypsum Co.,
  134 B.R. 188 (N.D. Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Parmalat Finanziaria S.p.A.,
  320 B.R. 46 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

In re Texaco Inc.,
  84 B.R. 911 (S.D.N.Y. 1988)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Torwico Electronics, Inc.,
  8 F.3d 146 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21

In re Udell,
  18 F.3d 403 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Keene Corp. v. Williams Bailey & Wesner, LLP (In re Keene Corp.),
  182 B.R. 379 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Key Tronic Corp. v. United States,
  511 U.S. 809 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MBNA America Bank, N.A. v. Hill,
  436 F.3d 104 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.),
  160 B.R. 502 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Meghrig v. KFC Western, Inc.,
        516 U.S. 479 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mishkin v. Ageloff,
        220 B.R. 784 (S.D.N.Y.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Nemours & Co., Inc.,
        341 F. Supp. 2d 215 (W.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
        458 U.S. 50 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ohio v. Kovacs,
        469 U.S. 274 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.),
        4 F.3d 1095 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 27, 29

Shugrue v. Air Line Pilots Assoc. (In re Ionosphere Clubs, Inc.),
        922 F.2d 984 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 29

State of New York v. Shore Realty Corp.,
        759 F.2d 1032 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States Gypsum Co. v. National Gypsum Co. (In re National Gypsum Co.),
        145 B.R. 539 (N.D. Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Apex Oil Co., Inc.,
        579 F.3d 734 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 21

United States v. Bestfoods,
        524 U.S. 51 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

United States v. Conservation Chem. Co.,
        619 F. Supp. 162 (W.D. Mo. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Delfasco, Inc.,
        409 B.R. 704 (D. Del. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Elias,
        269 F.3d 1003 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. ILCO,
    48 B.R. 1016 (N.D. Ala. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    63 B.R. 600  (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Moglia,
    No. 02 C 6131, slip op., (N.D. Ill. Jan. 2, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 19

FEDERAL STATUTES

11 U.S.C. § 101(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 23

11 U.S.C. § 101(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

28 U.S.C. § 1334(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

33 U.S.C. §§ 1251-1387 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 26, 30

42 U.S.C. § 6901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

42 U.S.C. § 6926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. § 6928 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. § 9601(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. § 9604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

42 U.S.C. § 9605(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 9606(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

42 U.S.C. § 9607(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

42 U.S.C. § 9617 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. §§ 11001-11050 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. §§ 6901-6992k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 26

42 U.S.C. § 6924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. §§ 7401-7671q . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 26

42 U.S.C. § 9601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATE STATUTES

Cal. Wat. Code § 13000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Health & Safety Code § 25300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

New York State Environmental Conservation Laws 27-0900 . . . . . . . . . . . . . . . . . . . . . . . 11

N.C.G.S. § 130A-310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

35 Pa. Stat. Ann. §§ 6018.101-6018.1003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## FEDERAL REGULATIONS

40 C.F.R. § 271.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

40 C.F.R. Pt. 300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

40 C.F.R. § 300.430 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), by its attorney Preet Bharara, United States Attorney for the Southern District of New York, as well as the State of Connecticut, the State of New York, the State of North Carolina, the Santa Ana Regional Water Quality Control Board, the California Department of Toxic Substances Control, the California State Water Resources Control Board, the Connecticut Commissioner of Environmental Protection, the Florida Department of Environmental Protection, the New York Department of Environmental Conservation, the North Carolina Department of Environment and Natural Resources, the North Carolina Division of Waste Management, and the Pennsylvania Department of Environmental Protection (collectively, "Governmental Entities"), respectfully submit this joint memorandum of law in support of their motion for withdrawal of the reference to the Bankruptcy Court of Chemtura Corp. et al. v. United States et al., Adversary No. 09-01719 (S.D.N.Y. Bankr.) (REG), an adversary proceeding pending in the United States Bankruptcy Court for the Southern District of New York (the "Adversary Proceeding") in connection with the chapter 11 bankruptcy proceeding captioned In re Chemtura Corp., et al., Case No. 09-11233 (S.D.N.Y. Bankr.) (REG).

## PRELIMINARY STATEMENT

The mandatory withdrawal provision of 28 U.S.C. § 157(d) requires a district court to withdraw the reference if the district court "determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Here, the issues raised by debtors-plaintiffs Chemtura Corporation; Great Lakes Chemical Corp.; ISCI, Inc.; KEM Manufacturing Corp.; and Naugatuck Treatment Company (collectively, the "Debtors") in the amended complaint filed in this Adversary Proceeding require substantial and material consideration of a

complex federal environmental statute, namely, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., as well as other federal environmental statutes including the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901-6992k; state statutes implementing the federal environmental regulatory scheme created by RCRA; and state statutes that are similar to CERCLA, all of which are designed for the protection of human health, public safety, and the environment.  Specifically, the Debtors' amended complaint asks the Court to declare that federal and state judicial and administrative orders and cleanup plans that contain injunctive remedial obligations to address environmental contamination and are imposed pursuant to federal and state environmental laws can be discharged in the bankruptcy proceeding as pre-petition "claims."  Resolution of this matter will necessarily involve substantial consideration and interpretation of these environmental laws and the obligations they impose on Debtors.  For the reasons set forth below, the reference to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") is subject to mandatory and discretionary withdrawal.

The Debtors, globally diversified producers of specialty chemical and polymer products and leading suppliers in the United States of home pool and spa chemicals with over three billion dollars of assets as of December 31, 2008,[1] currently are required, under approved cleanup plans as well as injunctive orders issued by federal district courts, state courts, the EPA, and state

---

[1] See Voluntary Petition, attached to the Declaration of Lawrence H. Fogelman, dated January 21, 2010 ("Fogelman Decl."), as Exhibit 1; see also www.sec.gov (Chemtura Corp. Form 10-K filing for the year ended December 31, 2008).  All exhibits referenced herein that are not included with the Debtors' amended complaint in the Adversary Proceeding are attached to the Fogelman Declaration.  The Governmental Entities are also providing the Court a CD containing the exhibits to the Debtors' amended complaint (referenced herein as "Amended Complaint Exs.").

agencies, to clean up hazardous substances for which they are responsible under applicable environmental laws at sites around the country. The Debtors do not dispute in the amended complaint filed in the Adversary Proceeding (the "Amended Complaint") that the hazardous substances they released or may be releasing into the environment pose an imminent and substantial endangerment to public health and safety; that the Debtors' cleanup obligations arise by virtue of federal and state environmental laws; that these cleanup orders were properly issued; and that the cleanup plans were properly approved, under CERCLA, or other laws protecting public safety, human health and the environment.[2] The Debtors nonetheless seek to impair the Governmental Entities from exercising their police and regulatory authority to enforce the environmental laws by preemptively seeking a declaratory judgment effectively discharging them from compliance with these environmental injunctive obligations. Debtors' argument that they can be relieved of their obligations to comply with court orders, administrative orders, and federal and state environmental laws has no merit.

The premise of the Debtors' Amended Complaint is that their legal obligation to ameliorate the ongoing threats to public health and safety posed by the sites depends upon whether Debtors currently own or operate the sites. The Debtors do not dispute that they must comply with cleanup orders involving contamination on property they currently own or operate – and that such injunctive obligations cannot be discharged as "claims." However, the Debtors contend that, if they have released hazardous substances at sites they formerly owned or operated,

---

[2] Debtors instead include a reservation of rights regarding their environmental liabilities: "While the Debtors may ultimately dispute their liability for Environmental Orders and Obligations for the Former Sites and Third-Party Sites and the factual predicate for that asserted liability, such dispute is not the subject of this Complaint." Amended Complaint ¶ 24.

or arranged for disposal of hazardous substances at sites owned by a third party, the
Governmental Entities are precluded from requiring the Debtors to comply with their cleanup
obligations under judicial and administrative orders, as well as federal and state environmental
laws, regardless of the continuing hazards posed to public health and safety.

In advancing this theory, the Debtors ignore well established Second Circuit precedent.
Specifically, the Second Circuit held in In re Chateaugay Corp. that injunctions to ameliorate
continuing pollution under CERCLA are not "claims" subject to discharge in bankruptcy, as
CERCLA does not permit payment in lieu of performance. 944 F.2d 997, 1007 (2d Cir. 1991).[3]
Although not specifically set forth in the Amended Complaint, the Debtors presumably contend,
as they did in their amicus submission in In re Lyondell Chemical Co., 09-10023 (S.D.N.Y.
Bankr.) (REG) ("Debtors' Amicus Brief") (Fogelman Decl. Ex. 2), that the Chateaugay decision
applies only to debtor-owned property. The Debtors' novel and narrow reading of CERCLA and
the Chateaugay decision should be rejected.

Additionally, the court adjudicating the Adversary Proceeding must construe the relevant
CERCLA provisions to determine, inter alia, what standards should be used to determine
whether there is "ongoing pollution" at the selected sites within the meaning of Chateaugay.
Because the substantive law to be applied to this dispositive inquiry is rooted in CERCLA,
withdrawal of the reference is required under well-settled law. Finally, to the extent that the

---

[3] The ruling in Chateaugay applies with equal force to cleanup orders issued pursuant to
several of the States' statutes that are analogous to CERCLA – e.g., California's Hazardous
Substances Account Act ("HSA"); Cal. Health & Safety Code § 25300 et seq.; California's
Porter-Cologne Water Quality Control Act, Cal. Wat. Code § 13000 et seq.; North Carolina's
Inactive Hazardous Sites Response Act of 1987, N.C.G.S. § 130A-310 et seq., as these statutory
schemes are similar to CERCLA. See, e.g., In re Jensen, 995 F.2d 925, 927, n.4 (9th Cir. 1993)
(noting strong similarity and interdependence between CERLCA and HSA).

Debtors seek to preclude the United States from ever asserting RCRA obligations or obligations imposed by other federal environmental laws on the sites identified by the Debtors in the Amended Complaint, the Court would need to construe such statutes to determine if a breach of the Debtors' cleanup obligations gives rise to a "right to payment" so as to make those obligations dischargeable "claims" under the Bankruptcy Code.

For purposes of this withdrawal motion, regardless of how a court would resolve these issues, there can be no dispute that a court would have to engage in substantial and material consideration of CERCLA, RCRA, and other federal environmental laws in order to resolve Debtors' Adversary Proceeding on the merits.  Congress has commanded that such interpretations of non-bankruptcy federal law be performed by the district court in the first instance.  For these reasons, under the mandatory withdrawal provisions of 28 U.S.C. § 157(d), the Adversary Proceeding must be withdrawn to the district court.  See infra at 14-27.  In light of the similarities between CERCLA, RCRA, and the state environmental laws that the Court would consider in this proceeding, and given the identical relief sought by Debtors irrespective of whether Debtors' obligations arise under state or federal law, principles of uniformity, judicial economy and efficiency likewise warrant permissive withdrawal of this proceeding.  See 28 U.S.C. § 157(d), infra at 27-30.

## BACKGROUND

**A.     The Chapter 11 Proceeding and the Proofs of Claim**

On March 18, 2009 (the "Petition Date"), each of the Debtors filed chapter 11 petitions in the United States Bankruptcy Court for the Southern District of New York.  Thereafter, on October 29, 2009, the United States timely filed proofs of claim against five Debtors -- Chemtura

5

Corporation; Great Lakes Chemical Corporation; Monochem, Inc; Naugatuck Treatment

Company; and Bio-Lab Inc. – in connection with 21 sites and facilities, asserting liabilities for

response costs, natural resource damages, and civil penalties under the Clean Air Act, 42 U.S.C.

§§ 7401-7671q; the Clean Water Act, 33 U.S.C. §§ 1251-1387; the Emergency Planning and

Community Right-to-Know Act, 42 U.S.C. §§ 11001-11050; and CERCLA.

Each of the proofs of claims filed by the United States contains an explicit reservation of

rights with respect to the Debtors' injunctive obligations.  For example, the United States

included the following language in each proof of claim:

> The Government is not required to file a proof of claim with respect to [the
> Debtor's] injunctive obligation to comply with work requirements and financial
> assurance obligations imposed by court orders or by environmental statutes,
> regulations, administrative orders, licenses, or permits, because such obligations
> are not claims under 11 U.S.C. § 101(5). [Debtor] and any reorganized debtor
> must comply with such mandatory requirements.  The Government reserves the
> right to take future actions to enforce any such obligations of [the Debtor].  While
> the Government believes that its position will be upheld by the appropriate court,
> the Government has included the aforementioned obligations and requirements in
> this Proof of Claim in a protective fashion, to safeguard against the possibility that
> [the Debtor] will contend that it does not need to comply with such obligations
> and requirements, and the appropriate court finds that it is not required to do so.
> Therefore, a protective contingent claim is filed in the alternative for such
> obligations and requirements, but only in the event that the appropriate court finds
> that such obligations and requirements are dischargeable claims under 11 U.S.C. §
> 101(5), rather than obligations and requirements that any reorganized debtor must
> comply with.  Nothing in this Proof of Claim constitutes a waiver of any rights by
> the Government or an election of remedies with respect to such rights and
> obligations.

Amended Complaint Ex. 2 at 33.  The United States also explained that each proof of claim is

"filed in a protective manner with respect to any and all compliance and work obligations,

including but not limited to any and all financial assurance obligations [of Debtor] under the

Resource Conservation and Recovery Act ('RCRA'), 42 U.S.C. §§ 6901-6992k."  See, e.g.,

Amended Complaint Ex. 2 at 33-34.

The State defendants in this Adversary Proceeding, through their agencies, also filed proofs of claim for non-injunctive obligations owed by the Debtors, as well as protective proofs of claim for injunctive cleanup obligations owed by the Debtors. For example, the Pennsylvania Department of Environmental Protection's proof of claim addressed "claims for civil penalties and the non-claim cleanup obligations of Debtor," and further stated that "this Proof of Claim is filed in a protective fashion with respect to Debtor's cleanup obligations . . . and the exercise of the Department's enforcement of police or regulatory powers against Debtor to enforce those cleanup obligations." Amended Complaint Exhibit 14; see also Amended Complaint Exs. 4, 20 (California's proofs of claim); Amended Complaint Ex. 18 (Connecticut's proof of claim); Amended Complaint Ex. 7 (Florida Department of Environmental Protection's proof of claim); Amended Complaint Ex. 9 (New Jersey's proof of claim); Amended Complaint Ex. 11 (New York's Notice of Administrative Claim and proof of claim); Amended Complaint Ex. 12 (North Carolina's proof of claim).

On at least certain of the sites referenced in the Amended Complaint, the Debtors have ceased performing or have threatened to cease performing remedial actions required by existing judicial consent decrees and administrative enforcement orders. For example, Debtor Chemtura Corporation ("Chemtura") seeks to stop performing its environmental obligations under a Consent Order and Agreement related to an oil refinery previously owned by Chemtura's predecessor in Bradford, Pennsylvania, where petroleum products and hazardous substances were released to soil and groundwater causing soil contamination and the pollution of Tunungwant Creek. See Amended Complaint Ex. 14 at 2. Chemtura's obligations on this site include the

7

operation of a groundwater recovery system to prevent the further release of petroleum contamination into Tunungwant Creek, the remediation of site-wide groundwater pollution and the cleanup of various disposal areas. See id. Chemtura threatened to cease operation of the groundwater recovery system in April 2009. See Chemtura Letter dated April 16, 2009 (attached as Fogelman Decl. Ex. 3).

Likewise, at a Brooklyn, New York site significantly contaminated with PCBs and volatile and semi-volatile organic compounds, Chemtura, whose corporate predecessor previously owned and operated the site, constructed a multi-million dollar remedial system pursuant to an administrative order on consent issued by the New York State Department of Environmental Conservation pursuant to the State's federally approved RCRA program. See Amended Complaint Ex. 10. The Debtors now refuse to operate that system in compliance with the order. See State of New York's December 10, 2009, Answer to First Complaint and Counterclaim ¶ 63-64 (Fogelman Decl. Ex. 4).

**B.    CERCLA**

Congress enacted CERCLA as a response to the serious human health and environmental dangers posed by property contaminated by hazardous substances. United States v. Bestfoods, 524 U.S. 51, 55 (1998). Chemtura has environmental obligations to the United States pursuant to CERCLA at three sites included in the Debtors' Amended Complaint: the Stauffer-LeMoyne site in Alabama, the Gowanus Canal site in New York, and the Laurel Park site in Connecticut. See Amended Complaint ¶¶ 15(a), 18(a), 18(b); Amended Complaint Ex. 2 at ¶¶ 10-14, 22-28, and 79-84 (United States Proof of Claim against Chemtura). California has likewise asserted environmental liabilities against Chemtura and Great Lakes Chemical Corporation based on its

8

state statutes that are analogous to CERCLA.  See Amended Complaint Exs. 4, 20 (California

proofs of claim); supra n.3.

CERCLA "grants the President broad power to command government agencies and

private parties to clean up hazardous waste sites." Key Tronic Corp. v. United States, 511 U.S.

809, 814 (1994).  Pursuant to CERCLA section 105(a), 42 U.S.C. § 9605(a), the EPA

promulgates the National Priorities List ("NPL"), which identifies the most serious hazardous

substances sites requiring remedial action.  See 40 C.F.R. Pt. 300, app. B.  For NPL sites, the

EPA performs (or requires other parties to perform) detailed studies – each of which is called a

remedial investigation and feasibility study ("RI/FS") – to ascertain the full nature and extent of

the contamination and to explore and evaluate remedial alternatives.  See 40 C.F.R. § 300.430(f).

Following the conclusion of these studies, and a public input process, the EPA selects a remedial

action to be implemented at the site and documents it in a Record of Decision ("ROD").  See 42

U.S.C. § 9617; 40 C.F.R. §  300.430(a)(2).

In addition to broad response authority, CERCLA establishes broad liability, reflecting

the principle that those responsible for creating hazardous conditions should bear the burden of

cleanup.  See B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1198 (2d Cir. 1992).  CERCLA

identifies four categories of liable parties or "covered persons"– sometimes referred to as

"potentially responsible parties" or "PRPs" – associated with the release or threatened release of

hazardous substances.  42 U.S.C. § 9607(a).  Those entities are: (1) current owners and operators

of facilities at which hazardous substances are located; (2) owners and operators of such facilities

at the time hazardous substances were disposed; (3) persons who arranged for disposal or

treatment of hazardous substances; and (4) certain transporters of hazardous substances.  42

U.S.C. § 9607(a)(1)-(4).

CERCLA contains several distinct enforcement provisions. For instance, section 106 of CERCLA authorizes the EPA to seek injunctive relief or issue administrative orders to abate "an actual or threatened release of a hazardous substance from a facility" where there "may be an imminent and substantial endangerment to the public health or welfare or the environment." 42 U.S.C. § 9606(a). Separate provisions of CERCLA authorize the EPA itself to undertake response actions designed to remove hazardous substances and provide appropriate remediation, using the Hazardous Substance Superfund. See 42 U.S.C. § 9604; see also Bestfoods, 524 U.S. at 55. The United States is authorized to recover its response costs from PRPs through a cost recovery action under section 107(a) of CERCLA. See 42 U.S.C. § 9607(a). The injunctive relief and monetary recovery provisions of CERCLA are distinct remedies. Cf. State of New York v. Shore Realty Corp., 759 F.2d 1032, 1049 (2d Cir. 1985) ("The standard for seeking abatement under section [106] is more narrow than the standard of liability under section [107].").

**C.   RCRA**

Congress enacted the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq., to address comprehensively the transportation, treatment, storage and disposal of hazardous waste generated nationwide. RCRA's primary purpose is to minimize the present and future threat to human health and the environment by reducing the amount of hazardous waste that is generated, and ensuring its proper treatment, storage, and disposal. See Meghrig v. KFC Western, Inc., 516 U.S. 479, 483 (1996); Ciba-Geigy Corp. v. Sidamon-Eristoff, 3 F.3d 40, 42 (2d Cir. 1993). Pursuant to RCRA's enforcement provisions, the EPA may issue administrative

10

orders and impose injunctive obligations on present or former hazardous waste generators as well as owners or operators of hazardous waste facilities to remediate the release of hazardous waste where the EPA believes that there may otherwise be imminent and substantial endangerment to health or the environment. See 42 U.S.C. § 6928 (RCRA Section 3008). Under RCRA, regulated entities are required to, inter alia, operate in compliance with RCRA's regulatory requirements, implement closure and post-closure work and corrective action work, and perform any necessary remedial action with respect to any imminent and substantial endangerment to health or the environment. These obligations may be set forth in a RCRA permit, a judicial consent decree, or an administrative order issued by EPA or a delegated state. See, e.g., 42 U.S.C. §§ 6924, 6928, 6973.

Under RCRA's statutory scheme, states may apply for and receive regulatory and enforcement authorization from the EPA to administer their own RCRA hazardous waste programs. 42 U.S.C. § 6926. State programs under RCRA must be "equivalent" to the federal RCRA program and, once approved, are carried out in lieu of the federal program. 42 U.S.C. § 6926. The EPA, however, retains enforcement and oversight powers and may bring enforcement actions, review State-issued permits, and conduct site inspections of hazardous waste facilities. 40 C.F.R. § 271.19; see also Ciba-Ceigy, 3 F.3d at 42; United States v. Elias, 269 F.3d 1003, 1010-11 (9th Cir. 2001).

Certain of the States named in the Adversary Proceeding have enacted RCRA statutes and obtained approval from the EPA to administer those statutes. In 1983, New York, for example, obtained EPA approval and authorization to administer New York's RCRA program, as set forth in New York State Environmental Conservation Laws ("ECL") 27-0900 et seq. See 51 Fed. Reg.

17,737 (May 15, 1986).  Likewise, the EPA has approved Pennsylvania's RCRA statute, the

Solid Waste Management Act.  See 35 Pa. Stat. Ann. §§ 6018.101-6018.1003 (2003); 59 Fed.

Reg. 29,804 (June 9, 1994) (EPA approval).  New York and Pennsylvania have issued consent

orders pursuant to their RCRA programs, which contain injunctive cleanup requirements because

of the release of hazardous substances to the environment, that Debtors seek to discharge in this

proceeding.  See Amended Complaint ¶¶ 15, 30, Exs. 10, 13.

**D.    Discharge of "Claims" Under the Bankruptcy Code**

When Congress enacted the current version of the Bankruptcy Code in 1978, it

specifically provided that the concepts of bankruptcy discharge and the attending "fresh start,"

while broad and important, did have limitations that were equally important.  One of those

limitations was the proviso that the Code's concept of monetary claim and discharge would not

apply to certain kinds of equitable remedies.  See Ohio v. Kovacs, 469 U.S. 274, 278-85 (1985).

Congress dictated that where non-bankruptcy law provides an equitable remedy for a breach of

performance, such remedy survives bankruptcy except where the breach of performance gives

rise to a right to payment.  See 11 U.S.C. § 101(5)(B); see also United States v. Apex Oil Co.,

Inc., 579 F.3d 734, 736-37 (7th Cir. 2009); AM Int'l, Inc. v. Datacard Corp., 106 F.3d 1342,

1348 (7th Cir. 1997).  Specifically, the Bankruptcy Code limits "claim" to mean a "right to an

equitable remedy for breach of performance if such breach gives rise to a right to payment."  11

U.S.C. § 101(5) (emphasis added).  Congress thus protected holders of equitable rights and

remedies that do not give rise to a right to payment, and decreed that they would not be forced to

accept suboptimal monetary recoveries.  See In re Udell, 18 F.3d 403,406-10 (7th Cir. 1994); In

re Davis, 3 F.3d 113, 116 (5th Cir. 1993).  This limitation on what constitutes a "claim" applies

to injunctive obligations imposed on potentially responsible parties to remedy hazardous substances at sites. See, e.g., In re Chateaugay Corp., 944 F.2d at 1007-08 (applying limitation in case involving CERCLA); Apex Oil Co., Inc., 579 F.3d at 736-37 (applying this limitation in case involving RCRA); In re Torwico Electronics, Inc., 8 F.3d 146, 151 n.6 (3d Cir. 1993) (the debtor's injunctive obligation to remediate contamination pursuant to state statute was not a dischargeable claim because the debtor "had no option to pay for the right to allow its wastes to continue to seep into the environment").

**E.     The Adversary Proceeding**

On November 3, 2009, the Debtors commenced this Adversary Proceeding, seeking a declaratory judgment that the Debtors' obligations to comply with orders and environmental laws in connection with at least 197 sites spanning across 21 states are "'claims' within the meaning of section 101(5) of the Bankruptcy Code" and are subject to discharge in the bankruptcy proceeding. Fogelman Decl. Ex. 5 (the "Initial Complaint"), ¶ 40. The Debtors also sought a discharge of environmental obligations that had not yet been identified or acted upon by the state and federal governments. See, e.g., Initial Complaint ¶¶ 12, 13 (attempting to obtain discharge where state governments and the federal government "may issue environmental remediation orders, consent decrees, notices of liability, or otherwise claim authority to impose liabilities or obligations upon Debtors with respect to environmental, health, and safety matters") (emphasis added). Moreover, the Debtors sought a determination that any environmental obligations on sites that the Debtors did not presently own or operate should be discharged in the bankruptcy regardless of whether the Debtors had identified these sites in their initial complaint. See Initial Complaint ¶ 22 n.2 (acknowledging that "[a]dditional formerly owned or operated sites may exist

13

where the Debtors have Environmental Orders or Obligations" but that the Debtors did not identify in the complaint or the exhibits attached to the complaint).

In their Amended Complaint filed on January 19, 2009, the Debtors listed ten sites for which they seek a declaratory judgment that their obligations to comply with injunctive clean up obligations, including obligations imposed through judicial and administrative orders, should be subject to discharge as "claims" within the meaning of section 101(5) of the Bankruptcy Code. See Amended Complaint (Fogelman Decl. Ex. 6) ¶ 30. Specifically, the Debtors seek a discharge of any obligations imposed on them in connection with these ten sites through "environmental orders, consent decrees, notices of liability, claims, demands, statutory or regulatory requirements, and other actual or contingent obligations and liabilities, including injunctive obligations to perform response actions with respect to actual or potential releases and threats of releases of hazardous substances or other contaminants." Amended Complaint ¶ 13.

The Debtors seek a discharge not only of claims that are presently known and have been asserted by the Governmental Entities at these ten sites, but also of environmental obligations that "may be asserted against the Debtors by the Defendants." Amended Complaint ¶ 29; see also id. ¶ 30 (stating that environmental obligations that "may be asserted" should be considered "claims" under section 101(5) of the Bankruptcy Code) (emphasis added). These include obligations under CERCLA, RCRA, and additional federal and state statutes.

Further, although the Amended Complaint reduces the number of identified sites at issue from 197 to ten, the Debtors have indicated that they do not intend to concede the non-dischargeability of their environmental obligations on the remaining 187 sites identified in the Initial Complaint. Nor do they concede non-dischargeability at those sites that they have failed to

14

identify in either the Initial Complaint or the Amended Complaint.  Rather, the Debtors have submitted to the Bankruptcy Court a letter stating that the Debtors "reserve their rights to file subsequent proceedings against any states or governmental entities with respect to the other sites (whether identified in the Defendants' proofs of claim or not)."  Fogelman Decl. Ex.7 at 2 n.1.

## ARGUMENT

### I.   THE DEBTORS' ADVERSARY PROCEEDING IS SUBJECT TO MANDATORY WITHDRAWAL OF THE REFERENCE

The Debtors' Adversary Proceeding is subject to mandatory withdrawal of the reference pursuant to 28 U.S.C. § 157(d) because resolution of this proceeding will require the Court's substantial and material consideration of federal environmental statutes in determining whether injunctive obligations imposed on Debtors pursuant to these statutes can be discharged. Specifically, the Court will need to substantially and materially consider the statutory requirements of CERCLA as well the parties' conflicting interpretations of the Second Circuit decision In re Chateaugay Corp., 944 F.2d 997 (2d Cir. 1991) in evaluating whether Debtors' injunctive obligation to remediate environmental harm can be discharged.  Moreover, Debtors' pursuit of a declaratory judgment to discharge their environmental obligations that have not been identified or asserted yet by the Governmental Entities likewise requires the Court to examine other federal environmental laws including RCRA in evaluating whether these obligations can be discharged.  Thus, a determination of the Debtors' declaratory judgment proceeding will involve the Court's substantial consideration of federal environmental statutes, including CERCLA and RCRA, in determining whether environmental clean up obligations imposed (or that may be imposed) on Debtors can be discharged.

15

District courts have "original and exclusive jurisdiction of all cases under title 11," 28 U.S.C. § 1334(a). A district court may "refer[] to the bankruptcy judges for the district" any or all bankruptcy cases. 28 U.S.C. § 157(a). Since 1984, all bankruptcy cases in this district have been referred to the bankruptcy courts. See Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). Although Congress provided a mechanism for district courts to refer cases to bankruptcy courts, Congress also provided the mechanism for district courts to withdraw that reference and re-assert its jurisdiction:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The two sentences of section 157(d) are read separately, and are generally referred to as, respectively, the "permissive" and the "mandatory" withdrawal provisions. "A motion for withdrawal of a case or proceeding shall be heard by a district judge." Fed. R. Bankr. P. 5011(a).

### A.   This Adversary Proceeding Is Subject to Mandatory Withdrawal of the Reference Because It Implicates A Number of Substantial Questions of Non-Bankruptcy Law

The resolution of this case necessarily will require substantial interpretation of CERCLA and other environmental laws and their interplay with the Bankruptcy Code, making withdrawal

of the reference mandatory. The issues presented in the Amended Complaint require the construction of CERCLA and RCRA, and a determination of whether injunctive obligations that are imposed by judicial and administrative orders, or that are or may be asserted pursuant to federal law for the protection of human health, public safety and the environment, are subject to discharge as part of a bankruptcy proceeding. These issues dominate the Adversary Proceeding.

The mandatory withdrawal provision specifies that a "district court shall . . . withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis supplied). The purpose of the mandatory withdrawal provision is "to assure that an Article III judge decides issues calling for more than routine application of [federal] statutes outside the Bankruptcy Code." In re Horizon Air, 156 B.R. 369, 373 (N.D.N.Y. 1993) (citing Eastern Airlines, Inc. v. Air Line Pilots Assoc. (In re Ionosphere Clubs, Inc.), No. 89 Civ. 8250 (MBM), 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)). Thus, section 157(d) requires withdrawal of the reference for any proceeding "that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991); see also United States Gypsum Co. v. National Gypsum Co. (In re National Gypsum Co.), 145 B.R. 539, 541 (N.D. Tex. 1992).

Under this standard, a district court is required to withdraw the reference whenever "substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." Shugrue v. Air Line Pilots Assoc. (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 995 (2d Cir. 1990) (internal quotation marks omitted); see also McCrory

Corp. v. 99¢ Only Stores (In re McCrory Corp.), 160 B.R. 502, 505 (S.D.N.Y. 1993) (same).

While courts in this circuit have "recognized that the mandatory withdrawal standard is more

easily satisfied when complicated issues of first impression are implicated under non-bankruptcy

federal laws," Keene Corp. v. Williams Bailey & Wesner, LLP (In re Keene Corp.), 182 B.R.

379, 382 (S.D.N.Y. 1995), the mandatory withdrawal provision of section 157(d) requires

withdrawal of the reference whenever a proceeding pending in bankruptcy court involves

anything more than the routine application of non-bankruptcy laws. See id. (withdrawal of the

reference "warranted when resolution of the matter would require the bankruptcy judge to

'engage in significant interpretation, as opposed to simple application,' of federal

non-bankruptcy statutes" (quoting Exxon, 932 F.2d at 1026)).

"Withdrawal of the reference may also be mandated where 'issues arising under non-title

11 laws dominate[] those arising under title 11. . . .'" Enron Corp. v. J.P. Morgan Secs., Inc. (In

re Enron Corp.), Nos. 07 Civ. 10527 (SAS), 07 Civ. 10530 (SAS), 2008 WL 649770, at *4

(S.D.N.Y. Mar. 10, 2008) (ellipsis in original) (quoting In re Texaco Inc., 84 B.R. 911, 921

(S.D.N.Y. 1988)). "In such cases, a district court does not have discretion to deny a petition for

withdrawal." American Tel. & Tel. Co. v. Chateaugay Corp., 88 B.R. 581, 584 (S.D.N.Y. 1988).

Courts in this district and elsewhere applying these standards routinely withdraw the

reference in cases that implicate substantial questions of environmental law. See, e.g., In re Dana

Corp., 379 B.R. 449, 456-61 (S.D.N.Y. 2007) (withdrawing the reference with respect to

objection to, and estimation of, EPA claim raising numerous issues under CERCLA including

joint and several liability and equitable allocation); United States v. Johns-Manville Corp. (In re

Johns-Manville Corp.), 63 B.R. 600, 602 (S.D.N.Y. 1996) (withdrawing the reference to resolve

whether post-petition CERCLA claim was covered by automatic stay); American Tel. & Tel. Co., 88 B.R. at 587-88 (withdrawing the reference to determine, among other things, whether right of contribution under section 113 of CERCLA was "claim" within meaning of Bankruptcy Code); In re Combustion Equip. Assocs., 67 B.R. 709, 713 (S.D.N.Y. 1986) (withdrawing the reference with respect to issue of whether post-bankruptcy CERCLA claim was discharged). See also In re National Gypsum Co., 134 B.R. 188, 192 (N.D. Tex. 1991) (noting that CERCLA is "precisely 'the type of law . . . Congress had in mind when it enacted the statutory withdrawal provision'" (quoting United States v. ILCO, 48 B.R. 1016 (N.D. Ala. 1985))); United States v. Delfasco, Inc., 409 B.R. 704, 705 (D. Del. 2009) (withdrawing the reference where United States sought, inter alia, to enforce prepetition remediation order under RCRA); United States v. Moglia, No. 02 C 6131, slip op. at 2-7 (N.D. Ill. Jan. 2, 2003) (withdrawing the reference with respect to adversary complaint for injunctive relief under RCRA and CERCLA) (attached to Fogelman Decl., Ex. 8). These cases also confirm the readily apparent proposition that the federal environmental laws, including CERCLA, are non-bankruptcy "laws of the United States regulating organizations or activities affecting interstate commerce," 28 U.S.C. § 157(d). See, e.g., Freier v. Westinghouse Elec. Corp., 303 F.3d 176, 202 (2d Cir. 2002) (generation and disposal of waste as regulated under CERCLA is economic business activity that substantially affects interstate commerce); In re Dana Corp., 379 B.R. at 455 ("It is undisputed that CERCLA is a federal statute that regulates organizations or activities affecting interstate commerce.").[4]

---

[4] Mandatory withdrawal applies to both core and non-core bankruptcy proceedings. See ILCO, 48 B.R. at l020; In re Lion Capital Group, 63 B.R. 199, 203 (S.D.N.Y. 1985).

Pursuant to the standards established by section 157(d), withdrawal of the reference of the Adversary Proceeding is required because the proceeding presents several substantial questions, including questions of first impression as set forth below, requiring the interpretation of CERCLA and other federal environmental statutes, corollary state statutes, as well as a consideration of the Governmental Entities' police and regulatory powers. Indeed, these issues are not mere questions of statutory interpretation, but also directly impact the ability of the sovereign authority of the Governmental Entities to enforce injunctive obligations on polluters attempting to avoid their statutory responsibilities to clean up their waste. For these reasons, withdrawal of the reference is mandatory.[5]

### 1. Disagreement Between the Parties as to the Applicability of the Second Circuit's Chateaugay Decision Necessitates Consideration of Substantial Issues of Environmental Law

The court must construe and substantially consider the substance of environmental laws in order to address the crux of Debtors' Adversary Proceeding. Specifically, in order to answer the question presented here – whether the Debtors' obligations to remediate the environmental damage they caused are "claims" under the Bankruptcy Code – the court must consider whether breach of performance of those injunctive obligations "gives rise to a right to payment." 11

---

[5] The Debtors' allegations regarding the States and their agencies do not explicitly raise issues of federal law to the extent that the orders issued by the States and their agencies arise under state law. Still, as discussed supra at 4 n.3, 11-12, the state statutes that underpin the Debtors' environmental liabilities are similar to CERCLA and RCRA. Accordingly, principles of uniformity, judicial economy and efficiency dictate that the entire adversary proceeding should proceed before the district court. See In re Orion Pictures Corp., 4 F.3d 1095, 1100 (2d Cir. 1993) (in deciding whether to permissibly withdraw the reference for "cause," courts should consider whether principles of, inter alia, efficiency and uniformity in the administration of the bankruptcy law would be served by withdrawal). See infra, Point II (discussing permissive withdrawal).

U.S.C. § 101(5). The Bankruptcy Code, however, does not supply the body of substantive law

from which a court can determine whether breach of these obligations gives rise to a right to

payment. Rather, the court must examine the provisions of the environmental law imposing

these injunctive obligations. Accordingly, withdrawal of the reference is appropriate in order for

the district court to consider whether the breach of injunctive obligations imposed by the relevant

environmental law gives rise to a right to payment. See, e.g., In re Chateaugay Corp., 944 F.2d at

1007-08 (evaluating CERCLA in determining if breach of injunctive obligation gives rise to right

to payment); Apex Oil Co., Inc., 579 F.3d at 736-37 (analyzing language of RCRA to determine

if breach of injunction issued under RCRA gave rise to right to payment); In re Torwico

Electronics, Inc., 8 F.3d at 151 (analyzing state environmental law).

The Governmental Entities assert that the Debtors' injunctive obligations pursuant to

CERCLA are not dischargeable. See In re Chateaugay Corp., 944 F.2d at 997. In Chateaugay,

after analyzing the relevant provisions of CERCLA and the language of section 101(5) of the

Bankruptcy Code, the Second Circuit held non-dischargeable a clean-up injunction to the extent

it is designed to end or ameliorate "current," "continued," or "ongoing pollution emanating"

from hazardous substances:

> These injunctions . . . frequently combine an obligation as to which the enforcing
> agency has an alternative right to payment with an obligation as to which no such
> alternative exists. An injunction that does no more than impose an obligation
> entirely as an alternative to a payment right is dischargeable. . . . On the other
> hand, if the order, no matter how phrased, requires [the debtor] to take any action
> that ends or ameliorates current pollution, such an order is not a "claim."
>
> . . . [I]t is the distinction we believe is made by the "claim" definition of the Code.
> EPA is entitled to seek payment if it elects to incur cleanup costs itself, but it has
> no authority to accept a payment from a responsible party as an alternative to
> continued pollution. . . . Since there is no option to accept payment in lieu of

21

> continued pollution, any order that to any extent ends or ameliorates continued
> pollution is not an order for breach of an obligation that gives rise to a right of
> payment and is for that reason not a "claim."

Id. at 1008.  The Second Circuit therefore concluded that a clean-up order issued under CERCLA

"that accomplishes the dual objectives of removing accumulated wastes and stopping or

ameliorating ongoing pollution emanating from such wastes is not a dischargeable claim."  Id.

Implicit in the Amended Complaint is the Debtors' contention that Chateaugay's

"ongoing pollution" standard does not govern in this matter, in light of the Debtors' proffered

distinction between properties they currently own or operate and those they do not.  See

Amended Complaint ¶¶ 15-16, 30; Debtors' Amicus Brief at 3-5 (arguing that Chateaugay

applies exclusively to debtor-owned sites).  The Governmental Entities, in contrast, assert that

nothing in Chateaugay's analysis of the intersection of CERCLA and section 101(5) of the

Bankruptcy Code supports distinguishing between debtor-owned or operated and non-debtor-

owned or operated sites, particularly where debtors are under injunctive obligations to address

environmental harm.  The Bankruptcy Code's definition of "claim" contains no such distinction

based on current ownership or operation.  Neither does section 106(a) of CERCLA, which

creates a uniform standard for the issuance of orders irrespective of current ownership or

operation where there is "an imminent and substantial endangerment to the public health or

welfare or the environment because of an actual or threatened release of a hazardous substance

from a facility."  42 U.S.C. § 9606(a).

Whether a court ultimately rules in favor of the Governmental Entities or in favor of the

Debtors, there can be no dispute that the resolution of this fundamental disagreement between the

parties – i.e., whether the Chateaugay "ongoing pollution" standard applies to CERCLA

injunctions issued with respect to sites no longer owned or operated by the Debtors – will require substantial and material consideration of section 106 of CERCLA.  See Bear, Stearns Sec. Corp. v. Gredd, No. 01 Civ. 4379 (NRB), 2001 WL 840187, at *4 (S.D.N.Y. July 25, 2001) (a district court "need not evaluate the merits of the parties' positions" on the substantive issues when deciding whether mandatory withdrawal is required as "[i]t is sufficient to note that answering [the] question will require [the district court] to interpret the various provisions of the [non-bankruptcy federal statute] relied upon by [the moving party] . . . regardless of whether [the district court] ultimately finds the non-bankruptcy statute] to be dispositive.").  Accordingly, withdrawal of the reference is mandated under section 157(d).

Indeed, if Chateaugay applies only to debtor-owned or operated sites, as the Debtors contend but the Government disputes, then the Court here would need to engage in the same type of analysis of CERCLA as in Chateaugay, only with respect to non-Debtor-owned or operated sites.  The Court would have to consider whether CERCLA injunctive obligations at such sites "impose a remedy for performance breach that gives rise to a right to payment." Chateaugay, 944 F.2d at 1007; see also 11 U.S.C. § 101(5).  More specifically, the Court would have to consider whether CERCLA requires on non-debtor owned or operated sites, as it does on debtor owned or operated sites, that "any order that to any extent ends or ameliorates continued pollution is not an order for breach of an obligation that gives rise to a right of payment." Chateaugay, 944 F.2d at 1008.  As noted above, the Governmental Entities contend that Chateaugay has already answered that question in the affirmative, reaching the same conclusion with respect to both debtor- and non-debtor-owned or operated sites.  But to the extent the question remains open as to the latter category sites, the Court here faces an issue of first

23

impression that can only be answered through substantial and material consideration of
CERCLA. Accordingly, withdrawal is mandatory on this basis as well.

> ### 2. Application of Chateaugay's "Ongoing Pollution" Test Requires Substantial Consideration of Substantive Environmental Laws

Assuming that Chateaugay controls the Court's analysis of the Adversary Proceeding,
resolution of the merits of the proceeding will turn on whether, for each of the non-Debtor-
owned or operated sites for which the Debtors have obligations to conduct remediation or
removal activities under section 106(a) of CERCLA or equivalent state statutes, those activities
were designed to "end[] or ameliorate[] current pollution." 944 F.2d at 1008. The Chateaugay
court provided no guidance about the meaning of "current pollution" or "ongoing pollution," nor
has the Second Circuit or any other court in this district interpreted these terms. Since this
question is a novel one, the reference must be withdrawn. Bear, Stearns Sec. Corp., 2001 WL
840187, at *2-4 ("[W]here matters of first impression are concerned" or "arguably novel," "'the
burden of establishing a right to mandatory withdrawal is more easily met.'").

The starting point for any analysis of whether pollution continues to emanate from
hazardous substances must be the body of environmental law created by CERCLA. As discussed
above, section 106(a) authorizes injunctive relief or administrative orders to abate "an actual or
threatened release of a hazardous substance" where there may be "an imminent and substantial
endangerment to the public health or welfare or the environment." 42 U.S.C. § 9606(a). The
"ongoing pollution" referenced in Chateaugay, if not synonymous with the release of hazardous
materials proscribed under section 106(a), must at least be informed by that provision. Each of
the relevant terms in section 106(a) is given substance by CERCLA, including the definitions of

"hazardous substance," 42 U.S.C. § 9601(14); "environment," id. § 9601(8); and "release," id. § 9601(22). See, e.g., B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1200-01 (2d Cir. 1992) (holding that CERCLA's definition of "hazardous substances" broadly encompasses substances regardless of the quantity or concentration or the source of the waste).

Moreover, whether the "imminent and substantial endangerment" test has been met will also be relevant to the inquiry of whether a particular injunction seeks to abate an ongoing threat of pollution. Courts ordinarily assess whether there is "imminent and substantial endangerment" within the meaning of section 106 based on the administrative record developed by the EPA through its site investigation and remedy selection process. See, e.g., United States v. E.I. du Pont de Nemours & Co., Inc., 341 F. Supp. 2d 215, 248 (W.D.N.Y. 2004) (citing 42 U.S.C. § 9613(j)(1)); see also B.F. Goodrich Co. v. Murtha, 697 F. Supp. 89, 96 n.9 & 97 (D. Conn. 1988) (citing EPA's Record of Decision and Feasibility Study Report). In making endangerment determinations, courts give consideration to "'[a] number of factors (e.g., the quantities of hazardous substances involved, the nature and degree of their hazards, or the potential for human or environmental exposure.)'" E.I. du Pont, 341 F. Supp. 2d at 247 (quoting United States v. Conservation Chem. Co., 619 F. Supp. 162, 194 (W.D. Mo. 1985)).

Accordingly, any application of the "ongoing pollution" standard to the unique facts presented at each of the non-Debtor-owned or operated CERCLA sites implicated by the Adversary Proceeding will require substantial and material consideration of the statute. Therefore, withdrawal of the reference is mandatory.

25

**B.** **Resolution of the Debtors' Adversary Proceeding Would Require Addressing Questions of First Impression in the Second Circuit as to Whether Breach of Performance Gives Rise to a "Right of Payment" under Federal Environmental Statutes Other than CERCLA**

In their Adversary Proceeding, the Debtors seek an adjudication of the dischargeability of injunctions and administrative orders that "may be asserted" at the sites identified by the Debtors. See Amended Complaint ¶¶ 29-30. The Debtors' formulation necessarily encompasses environmental obligations that the Governmental Entities have not identified or asserted at the present time.

For each of these obligations, there are a number of federal environmental statutes under which the Debtors may be liable, each of which has a different statutory scheme. For example, Debtors may have responsibilities to prevent harm to the environment pursuant to RCRA (42 U.S.C. §§ 6901-6992k), the Clean Water Act (33 U.S.C. §§ 1251-1387), the Clean Air Act (42 U.S.C. §§ 7401-7671q), as well as various other environmental laws. In order to evaluate the Debtors' request for sweeping relief, a court would be required to conduct an in-depth examination of each such statute to determine whether breach of an injunctive obligation addressing Debtors' obligation to remediate environmental harm pursuant to the statute would give rise to a right to payment under the statute. Yet many of these environmental statutes by their terms do not provide such a right to payment. For example, in Apex, the Seventh Circuit examined RCRA, which formed the basis of the Government's cause of action for injunctive relief, to conclude that the statute "does not entitle a plaintiff to demand, in lieu of action by the defendant that may include the hiring of another firm to perform a clean up ordered by the court, payment of clean-up costs. It does not authorize any form of monetary relief." 579 F.3d at 736

26

(emphasis added).

Moreover, while other Circuits have considered whether equitable obligations under RCRA and other environmental statutes are "claims" subject to discharge – and concluded that they are not, as in <u>Apex</u> – the Second Circuit's decision in <u>Chateaugay</u> was limited to the CERCLA context.  Thus, to consider the relief the Debtors have requested, the court would be required to engage in substantial and material consideration of issues of first impression in the Second Circuit under various federal environmental statutes other than CERCLA.  Accordingly, withdrawal is mandatory.

## II.    THIS COURT SHOULD WITHDRAW THE REFERENCE AS A MATTER OF DISCRETION

In the alternative, this Court should withdraw the reference as a matter of discretion pursuant to Section 157(d), which provides, in relevant part, that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).  Although Section 157(d) does not define "cause," the Second Circuit has held that district courts should consider the following factors when determining if cause exists to withdraw the reference:  (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors. See <u>Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)</u>, 4 F.3d 1095, 1101 (2d Cir. 1993).  Applied here, the <u>Orion</u> factors support permissive withdrawal of the reference.

Core proceedings include "[c]laims that clearly invoke substantive rights created by federal bankruptcy law [that] necessarily arise under Title 11" as well as "proceedings that, by their nature, could arise only in the context of a bankruptcy case." MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 108-09 (2d Cir. 2006). The crux of this proceeding stems from an interpretation of the environmental laws that would exist independently of the Bankruptcy Code (e.g., whether a polluter has an option under environmental law to pay money instead of complying with a cleanup order). Thus, these issues are not the type that "could arise only in the context of a bankruptcy case." Id. at 109.[6]

However, even if the Court were to conclude that this Adversary Proceeding is a core proceeding, discretionary withdrawal of the reference is still appropriate. "While the question whether the proceeding sought to be withdrawn is core or non-core is significant, it is not dispositive. A core proceeding . . . may be withdrawn 'based on a finding by the Court that the withdrawal of reference is essential to preserve a higher interest.'" In re Parmalat Finanziaria S.p.A., 320 B.R. 46, 50 (S.D.N.Y. 2005) (citations omitted); see also Mishkin v. Ageloff, 220 B.R. 784, 800 (S.D.N.Y.1998) (finding that if a matter is "core" weighs against withdrawal of the reference, but is not dispositive, because "[i]n the final analysis, the critical question is efficiency and uniformity"). The "higher interest" at stake here is the preservation of the ability of federal

---

[6] Section 157(b)(2) includes in its description of core proceedings an "allowance or disallowance of claims against the estate" and "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2). In this proceeding, however, the key question is not an evaluation of the disallowance or dischargeability of a particular "claim" or "debt" (defined in the Bankruptcy Code as "liability on a claim," 11 U.S.C. § 101(12)), but rather an evaluation of environmental statutes to determine if a breach of the Debtors' cleanup obligations gives rise to a "right to payment" so as to make those obligations "claims" under the Bankruptcy Code in the first instance.

and state sovereign entities to enforce injunctive obligations, in accordance with state and federal environmental law, on entities responsible for polluting the environment.

In this case, permissive withdrawal would be an appropriate use of judicial resources because the district courts have expertise in handling complex environmental statutes such as CERCLA, RCRA and other federal and state environmental statutes.  In addition, given that Debtors are seeking identical relief against the United States and the named State defendants, and in light of the similarity of state environmental laws to the federal environmental laws at issue, principles of uniformity, judicial economy and efficiency warrant permissive withdrawal.  See In re Orion Pictures Corp., 4 F.3d at 1100.

Moreover, there is no efficiency in having the bankruptcy court decide questions of environmental law in the first instance even if this lawsuit raised a "core" issue, since any decision by the bankruptcy court on a core issue is appealable as a matter of right to this Court, 28 U.S.C. § 157(c)(1), which reviews a bankruptcy court's legal findings de novo.  See Shugrue v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 988-89 (2d Cir. 1990).  In light of the complexity and importance of the matters at issue here, an appeal to the district court is highly likely.  Withdrawal of the reference would minimize such duplicative review and promote the efficient use of judicial resources.

Further, resolution of these matters in the district court would not unduly delay the proceedings.  This Court can impose an appropriate briefing and discovery schedule to resolve the environmental issues that would take into account the time requirements of the bankruptcy proceedings.  Accordingly, permissive withdrawal will not impose unnecessary cost and delay on the parties.

29

Moreover, withdrawal of the reference will not hinder uniformity in bankruptcy administration. The Governmental Entities seek to withdraw the reference solely with respect to the matters alleged in the Adversary Proceeding. This "limited withdrawal of the reference as to this single issue pose[s] no threat to the uniformity of the administration of the estate." In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996). Finally, the Governmental Entities are not forum shopping. They have timely moved for withdrawal before the Bankruptcy Court has taken any substantive actions in this Adversary Proceeding. Accordingly, the Orion factors favor permissive withdrawal of the reference as a matter of the Court's discretion.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion of the United States and the States for withdrawal of the reference pursuant to 28 U.S.C. § 157(d).

Dated: January 21, 2010
New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:   /s/ Lawrence H. Fogelman
MATTHEW L. SCHWARTZ
LAWRENCE H. FOGELMAN
BRIAN K. MORGAN
NATALIE N. KUEHLER
Assistant United States Attorneys
Attorneys for the United States of America

30

By: /s/ Thomas G. Heller and Eric M. Katz
STATE OF CALIFORNIA ACTING BY AND THROUGH THE CALIFORNIA
DEPARTMENT OF TOXIC SUBSTANCES CONTROL, THE STATE WATER RESOURCES
CONTROL BOARD, THE REGIONAL WATER QUALITY CONTROL BOARD, SANTA
ANA REGION
By:     Thomas G. Heller and Eric M. Katz
Deputy Attorneys General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
Tel:  (213) 897-2600
Fax:  (213) 897-2802
thomas.heller@doj.ca.gov
eric.katz@doj.ca.gov


/s/ Krista E. Trousdale
CONNECTICUT COMMISSIONER OF ENVIRONMENTAL PROTECTION
By:     Krista E. Trousdale
Assistant Attorney General
55 Elm Street
Hartford, CT  06106
Tel.  (860) 808-5250
Fax: (860) 808-5386
krista.trousdale@po.state.ct.us


FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION

By /s/ Jonathan H. Alden, Esq.
    Jonathan H. Alden, Esq., Asst. Genl. Counsel
    3900 Commonwealth Blvd.
    M.S. 35
    Tallahassee, FL  32399
    (850) 245 2238
    jonathan.alden@dep.state.fl.us
    Florida Bar No.  366692

31

FOR THE STATE OF NEW YORK
ANDREW M. CUOMO, ATTORNEY GENERAL

/s/ Maureen F. Leary
By: Maureen F. Leary
Assistant Attorney General
Environmental Protection Bureau
New York State Department of Law
The Capitol
Albany, New York 12224-0341
(518) 474-7154
Maureen.Leary@ag.ny.gov


FOR THE STATE OF NORTH CAROLINA:
ROY COOPER
Attorney General

By: /s/ W. Wallace Finaltor, Jr.
W. Wallace Finlator, Jr.
Assistant Attorney General
North Carolina Department of Justice
9001 Mail Service Center
Raleigh, N.C. 27699-9001
Tel.: 919-716-6600
Fax:  919-716-6939
wfinlat@ncdoj.gov
NC Bar # 14197

32

FOR THE PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION

/s/ Stephanie K. Gallogly
Stephanie K. Gallogly, Assistant Counsel
Office of General Counsel
Northwest Regional Counsel
Department of Environmental Protection
230 Chestnut Street
Meadville, PA  16335-3481
Tel: (724) 656-3471;  Fax:  (724) 656-3267
E-mail:  sgallogly@state.pa.us

33